DECISION
This matter comes before the Court on the appeal of Paul F. Mercurio and Carol Mercurio ("Appellants") from a decision of the Zoning Board of Review of the Town of Narragansett ("Board"), denying Appellants' application for a special use permit along with dimensional variances. The Board denied Appellants' application after holding public hearings on May 5, 2005, and June 23, 2005. The Board's written decision is dated December 30, 2005, and was filed on January 13, 2006. Appellants timely filed their appeal to this Court on January 27, 2006. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 Facts and Travel
Appellants own an unimproved coastal lot designated as Lot 178 and located on Glenwood Avenue in Narragansett, Rhode Island (the "property"). Tr. 5/5/05 at 3. Appellants submitted an application to the Board requesting a special use permit and dimensional variances for the construction of a single-family home on the property. Id. When originally platted as a fifty foot by one hundred foot lot, the property covered an *Page 2 
area of 5000 square feet (Id. at 10) but currently comprises 4760 square feet.[1] Tr. 6/23/05 at 22-24. The property is located in an R-10 Zone — in which the minimum lot size is 10,000 square feet — but it is a substandard lot of record as it was platted out prior to its being included in an R-10 Zone. Tr. 5/5/05 at 10; see also G.L. 1956 §45-24-31(59). The property is located within the Narragansett Zoning Ordinance's coastal resources overlay district and construction is only permitted after Board approval of a special use permit. In addition, there is a one-hundred foot setback requirement from any coastal feature under § 4.4(c)(8). The Planning Board of the Town of Narragansett considered Appellants' application, found it to be in conformance with the Town's Comprehensive Plan, and recommended that the Board approve the application subject to certain conditions.[2] The Board considered Appellants' application at public hearings held on May 5, 2005 and June 23, 2005. *Page 3 
At the Board's hearings, Craig Carrigan testified on behalf of Appellants' application. Mr. Carrigan is a registered professional engineer in Rhode Island, and the engineer of record on the project.[3] Id. at 3. Mr. Carrigan testified that the property covers less than 5000 square feet, contains a coastal feature — a riprap to prevent erosion of the shore — and is serviced by municipal sewer and water systems. Id. at 4. Mr. Carrigan stated that the proposed construction is a "very small home" at twenty feet by thirty-two feet.Id. at 5. According to Mr. Carrigan, the proposed development requires dimensional variances of fifteen feet at the front of the property and one foot on the north side of the property. Id. at 4. Mr. Carrigan testified that these variances are necessary in order to place the proposed structure as far from the coastal feature as possible.Id. at 5.
Mr. Carrigan also told the Board that construction of the new home would not affect the drainage features of the surrounding properties, nor would the construction result in increased erosion of the coastline as long as certain erosion control features were implemented.Id. at 5-6. Furthermore, the proposed home would be built on elevated piers so as to require only minimal excavation and grading, as well as allow parking underneath the house on a water-permeable driveway.Id. at 7. Finally, Mr. Carrigan stated that the project would not pose any threat to surrounding properties or to public health and safety.Id. *Page 4 
Jerry Sahagian also testified on behalf of Appellants.[4] The Board found Mr. Sahagian to be an expert witness on real estate. Id. at 12. Mr. Sahagian testified that he is familiar with the area in which Appellants have proposed to construct their home. Id. According to Mr. Sahagian, the area contains no commercial development whatsoever but instead consists entirely of single-family dwellings, most of which encroach on the setbacks required by the Narragansett Zoning Ordinance.Id. at 14. Mr. Sahagian stated that the proposed development is in harmony with the surrounding uses and that in his opinion granting the special use permit and dimensional variances would not substantially or permanently injure the use of surrounding properties because Appellants' home "would conform with all the other homes in the area." Id.
After Mr. Sahagian had finished testifying, several neighbors appeared before the Board in order to voice their objections to the proposal. The Board did not recognize any of the neighbors as an expert witness. The neighbors expressed concerns about the effect construction would have on drainage, and they felt that the proposed home would have a negative impact on property values in the neighborhood and that their access to the water would be impeded. The objectors also believed that the property is simply not large enough to build a single-family house on, and one neighbor asked the Board members to act as conservationists by limiting the amount of development that it would allow to occur in Narragansett. Another remonstrant told the Board that, in her opinion, granting the Appellants' application to build on such a small lot would be "outrageous and dangerous." Tr. 6/23/05 at 34. *Page 5 
At the conclusion of the June 23, 2005 hearing, the Board unanimously denied Appellants' application for failure to meet the special permit standards enumerated in Section 12.5 of the Narragansett Zoning Ordinance (the "Ordinance"). Id. at 61. In its written decision, the Board set out its findings of fact and conclusions of law. The Board first found that the property is located in a V19 Flood Zone and that the proposed location of the structure is within eight feet of a coastal feature, necessitating a variance of ninety-two feet from the Ordinance's prohibition on construction within one hundred feet of a coastal feature. See Ordinance § 4.4(c)(8). The Board found that construction of the house within eight feet of the costal feature — the riprap — poses a danger to surrounding properties, and that it presents "the significant potential to injure the uses of the surrounding properties and would create a condition inimical to the public health and safety." The Board further found that the Rhode Island Costal Resources Management Council ("CRMC") did not make a favorable preliminary determination on Appellants' application. This timely appeal followed.[5]
 Standard of Review
Rhode Island General Laws 1956 § 45-24-69 provides this Court with the specific authority to review decisions of town zoning boards. Under § 45-24-69(d), this Court has *Page 6 
the power to affirm, reverse or remand a zoning board decision. In conducting its review, "[t]he court shall not substitute its judgment for that of the zoning board . . . as to the weight of the evidence on questions of fact." G.L. 1956 § 45-24-69(d). This Court may reverse or modify the zoning board's decision "if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Id.
Judicial review of administrative action is "essentially an appellate proceeding." Notre Dame Cemetery v. Rhode Island State Labor RelationsBoard, 118 R.I. 336, 339, 373 A.2d 1194, 1196 (1977); see alsoMauricio v. Zoning Board of Review of the City of Pawtucket,590 A.2d 879, 880 (R.I. 1991). When a question of statutory interpretation is presented, an appellate court conducts its review of that issue de novo.Tanner v. Town Council, 880 A.2d 784, 791 (R.I. 2005).
As to this Court's review of a zoning board's factual findings, "in reviewing a decision of a zoning board of review, the trial justice `must examine the whole record to determine whether the findings of the zoning board were supported by substantial evidence.'" Caswell v. GeorgeSherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981) (quoting Tooheyv. Kilday, 415 A.2d 732, 735 (R.I. 1980)) (other quotations omitted) (emphasis added). Substantial evidence is relevant evidence that a reasonable person would accept as adequate to support the board's conclusion and amounts to "more *Page 7 
than a scintilla but less than a preponderance." Id. In short, a reviewing court may not substitute its judgment for that of the board's if it "can conscientiously find that the board's decision was supported by substantial evidence in the whole record." Mill Realty Assocs. v.Crowe, 841 A.2d 668, 672 (R.I. 2004) (quoting Apostolou v.Genovesi, 120 R.I. 501, 509, 388 A.2d 821, 825 (1978)).
 Analysis
On appeal, Appellants argue that the Board's denial of their application was not based on competent evidence as the objectors did not present any expert testimony to rebut that of Mr. Sahagian. Appellants also contend that there is no evidence in the record to support the Board's findings that the proposed construction would present a "hazard" to the surrounding properties and that the project "has the significant potential to injure the uses of the surrounding properties and would create a condition inimical to the public health and safety." According to Appellants, the competent evidence adduced before the Board actually supports the granting of a special use permit along with dimensional variances. As such, Appellants urge this Court to find that the Board's decision is clearly erroneous in light of the reliable, probative, and substantial evidence contained within the entire record.
The Board argues that the record does contain substantial evidence supporting its decision to deny Appellants' requests for a special use permit and dimensional variances. The Board states that its finding that the proposed construction would present a hazard to surrounding properties is supported by testimony of an objecting neighbor, Rodney Labrecque, as well as certain correspondence which he had submitted to the Board. The Board also argues that its denial is supported by evidence in the record showing that the *Page 8 
project does not comply with the standards imposed by the CRMC, compliance with which is required by § 4.4(b) of the Ordinance.
Before addressing the arguments of the parties, this Court notes that the property is located in Narragansett's coastal resources overlay district and therefore a special use permit is required to construct a single-family home. Ordinance § 4.4(b). In addition, Appellants state that it is impossible for them to comply with the Ordinance's dimensional requirements and have applied for both a special use permit and dimensional relief. In general, a zoning board may not grant a dimensional variance in conjunction with a special use permit absent specific statutory authorization. See Newton v. Zoning Board of Reviewof Warwick, 713 A.2d 239, 241 (R.I. 1998). Therefore, this Court must first determine whether the Board possesses the authority to grant a dimensional variance along with a special use permit.
Rhode Island General Laws 1956 § 45-24-42(c) states that a zoning ordinance "may provide that an applicant may apply for, and be issued, a dimensional variance in conjunction with a special use." The Ordinance does exactly this, as it states that the Board
 may grant a dimensional variance from the front, side, and rear yard requirements of section 6.4 or 6.5 for a single-family dwelling and accessory structures in conjunction with a special use permit, provided the relief granted does not have the effect of allowing a structure to be placed closer to a wetland or coastal feature as described in section 4.3 or 4.4. Ordinance § 12.4.[6]
The Ordinance further provides that when "the special use could not exist without the dimensional variance, the zoning board of review shall consider the special use permit *Page 9 
and the dimensional variance together to determine if granting the special use is appropriate based on both the special use criteria and the dimensional variance evidentiary standards." Id.; see also G.L. 1956 § 45-24-42(c).
This Court finds that Ordinance § 12.4 authorizes the Board to grant a special use permit in conjunction with a dimensional variance. Having found that the Board is empowered to grant Appellants' application for a special use permit and a dimensional variance, this Court turns to the substantive issues presented by this appeal.
 Denial of the Special Use Permit
It is undisputed that the property is located within a coastal resources overlay district, and the Board so found in its written decision. Pursuant to Ordinance § 4.4(b), a structure may only be erected on a site within the coastal resources overlay district after the issuance of a special use permit from the Board. The Board may not grant a special use permit unless it makes the following findings:
 (1) That the use will comply with all applicable requirements and development and performance standards set forth in sections 4 and 7 of this ordinance; except that the board may grant a variance from dimensional setbacks incorporated in the development standards of section 4.3(4) of the coastal and freshwater wetlands overlay district, and section 4.4(c) of the coastal resources overlay district, in accordance with the requirements of section 11 of this ordinance;
 (2) That the use will be in harmony with the general purpose and intent of this ordinance and the comprehensive plan of the Town of Narragansett;
 (3) That the granting of the special use permit will substantially serve the public convenience and welfare;
 (4) That the use will not result in or create conditions inimical to the public health, safety, morals, and general welfare;
 (5) That it will not substantially or permanently injure the appropriate use of the surrounding property; *Page 10 
 (6) In addition to the above, the zoning board of review shall consider:
 a. Access to air, light, views, and solar access.
 b. Public access to water bodies, rivers and streams.
 c. The conservation of energy and energy efficiency. Ordinance § 12.5.
After the close of the public hearing, the Board unanimously voted to deny Appellants' application for failure to meet any of the six standards contained within Ordinance § 12.5. Tr. 6/23/05 at 61. The Board's written decision states that "the construction of the structure within 8 feet of the coastal feature presents a hazard to the surrounding properties," and that "the construction as proposed has the significant potential to injure the uses of the surrounding properties and would create a condition inimical to the public health and safety." The Board further found that the property is located in a V19 Flood Zone, in which the CRMC mandates a minimum fifty foot setback from any coastal feature. The Board also found that waves crest over the property and travel across Glenwood Avenue during severe storms.
The Board specifically found that "the Objector's Exhibit 1A from Rodney LaBrecque indicates that during severe storms, waves crest over the subject property and cross over Glenwood Avenue." The exhibit the Board refers to is a letter, dated May 5, 2005, from Rodney and Shirley LaBrecque to the members of the Board.[7] The Board's finding is based on the statement contained therein that "[d]uring severe storms and hurricanes, it is not unusual for high tide waves and surges to crest over the top of the bluff, into lot 178, and even across the road into our front yard." See Objector's Exhibit 1A. *Page 11 
The record reveals that both Rodney and Shirley LaBrecque testified in opposition to Appellants' application at the hearing on June 23, 2005. Neither witness repeated the allegation that waves crest onto the property or cross the street, nor did any other objecting neighbor testify to any similar occurrences. The LaBrecques had the opportunity to provide the Board with sworn testimony in support of their allegations and failed to do so. As such, the sole basis for the Board's finding that waves crest over the property is an unsworn, uncorroborated letter that was submitted to it sometime prior to June 23, 2005 hearing.
This Court finds that such a letter, standing alone, is not legally competent evidence. After examining the entire record, this Court is unable to discern any other evidence that would arguably support the Board's finding that "during severe storms, waves crest over the subject property and cross over Glenwood Avenue." Because no competent evidence supported the Board's finding, this Court finds that the Board's conclusion was clearly erroneous in light of the reliable, probative, and substantial evidence of the whole record.
This Court notes that even if the Board's finding that waves crest over the property was supported by substantial evidence, such a finding does not support the Board's denial of Appellants' application under Ordinance § 12.5. The Board ultimately concluded that construction of the proposed home would present a hazard to the surrounding properties, that it has the potential to injure the uses of the surrounding properties, and that it would create a condition inimical to the public health and safety. The allegation that waves crest over the subject property and sometimes cross into the *Page 12 
street — even if true — has no bearing on the standards contained in Ordinance § 12.5 but is relevant only to Appellants' property itself.
Ordinance § 12.5 requires the Board to consider the effect that the proposed use has on the surrounding properties as well as on public health and safety (emphasis added). Although waves cresting over the property could certainly pose a hazard to the structure proposed by Appellants, there is no evidence in the record that the proposed use would have any negative effect whatsoever on the surrounding properties or public health and safety. To the contrary, Mr. Carrigan testified that the proposal would not pose a threat to either the surrounding properties or to public health or safety. This Court finds that any evidence of waves cresting over the property is not probative of the issue before the Board: whether or not the proposed construction would put the surrounding properties at risk.
The Board further found that the property is located in a V19 Flood Zone and that, according to the CRMC, a minimum fifty foot setback from a coastal feature "is considered to be of particular concern in a high hazard flood zone." These findings do not speak to any potential hazard posed to the surrounding properties or to the public health and safety. Rather, they are relevant only to whether the proposed structure itself would be at risk to damage from flooding, a consideration not before the Board in the application for a special use permit. Similarly, the possibility that the CRMC may not grant its own approval of the proposed construction is not a consideration properly before the Board in granting a special use permit.[8] To the extent that the Board's denial of *Page 13 
Appellants' application turned on the property's location in a V19 Flood Zone combined with the absence of a fifty foot setback from the coastal feature, this Court finds that the Board exceeded its statutory authority as it essentially added its own requirements to those found in Ordinance § 12.5
After a thorough examination of the entire record, this Court can find no competent, probative evidence to support the Board's ultimate findings that Appellants' proposal would present a hazard to surrounding properties and would create a situation inimical to the public health and safety. This Court finds that the Board's findings that "the construction of the structure within 8 feet of the coastal feature presents a hazard to the surrounding properties" and that "the construction as proposed has the significant potential to injure the uses of the surrounding properties and would create a condition inimical to the public health and safety" are not supported by substantial evidence. This Court further finds that the Board's denial of Appellants' application on the basis of those findings was clearly erroneous in light of the reliable, probative, and substantial evidence of the entire record, exceeded the Board's statutory authority, and was an abuse of discretion.
 Substantial Evidence
Rather than provide support for the Board's denial of Appellants' application, the evidence introduced before the Board actually comprises substantial evidence in favor of the granting of the special use permit. When an applicant for a special use permit shows *Page 14 
that all of the conditions and requirements for the granting thereof have been satisfied, the denial of the requested permit constitutes an abuse of discretion. See Salve Regina College v. Zoning Board of Reviewof Newport, 594 A.2d 878 (R.I. 1991).
Ordinance § 12.5(1) first requires the Board to find that the proposal complies with the applicable development standards found in Ordinance § 4. The pertinent development standards contained therein are as follows:
 (1) The proposed project will not interfere with public access to or use and enjoyment of tidal waters and shorelines features;
 (2) The proposed project will not degrade the aesthetic and recreational values of tidal waters or diminish the natural diversity of shoreline features;
 (3) The proposed project will not degrade existing water quality or adversely affect the circulation and flushing patterns of tidal waters, or diminish the value of tidal waters and shoreline features as habitats for fish, shellfish, wildlife, and wildfowl;
 (4) The proposed project will not increase the volume of velocity of stormwater runoff or sedimentation of tidal waters or exacerbate the potential for shoreline erosion or flooding;
 (5) The proposed project will not diminish the value of any shoreline feature as a storm and hurricane buffer;
 (6) Any filing, grading, excavating, and other land alteration will be the minimum necessary to construct the proposed project;
 (7) The proposed project will not pose any threat to public health, public safety, or property; (8) . . . A 100-foot wide buffer is required for other areas fronting on other natural shoreline features in the coastal resource overlay district. Within these buffer areas all structures, roads, [and] individual sewage disposal systems are prohibited, except as allowed by section 16 of this ordinance. Ordinance § 4.4(c).
This Court finds that Mr. Carrigan's testimony provided the Board with substantial evidence that the project will not interfere with public access to the tidal waters, degrade the existing water quality, increase coastal erosion, or diminish the value *Page 15 
of any shoreline feature as a storm and hurricane buffer. Tr. 5/5/05 at 6. In addition, there was testimony that the grading and excavation that has been proposed is the minimum necessary in order to construct the proposed single-family dwelling. Id. at 7. Mr. Carrigan also stated that the project would not pose any threat to public health, safety, or property, nor would it have a detrimental impact on storm water runoff from the property. Id. Upon consideration of the entire record, this Court finds that Appellants presented the Board with substantial evidence showing that the proposed project complies with all the applicable development standards found in Ordinance § 4.4(c).[9]
The second standard contained in § 12.5 requires the Board to find that "the use will be in harmony with the general purpose and intent of this ordinance" and the town's comprehensive plan. Ordinance § 12.5(2). With respect to this requirement, Appellants' expert witness testified that the proposal is in harmony with the surrounding residential uses. The Board also found that the Narragansett Planning Board reviewed Appellants' proposal and recommended approval after concluding that it conforms with the town's comprehensive plan.
It is, of course, true that "there is no talismanic significance to expert testimony" and such testimony "may be accepted or rejected by the trier of fact, particularly when there is persuasive lay testimony on the actual observed effects of prior construction." Restivo v.Lynch, 707 A.2d 663, 671 (R.I. 1998) (internal citation omitted). Here, however, there was no lay testimony on any actual ill effects of prior construction in the area. Indeed, the expert's testimony that the proposal is in harmony with surrounding *Page 16 
uses was supported by the Planning Board's recommendation that the proposal be approved. The Board did not find the expert's testimony to be incredible, nor did it find that Appellant's proposed use would not be in harmony with the Ordinance and the comprehensive plan. As such, this Court finds that the Board had no basis for disregarding the expert testimony and that Appellants have therefore presented the Board with substantial evidence to meet Ordinance § 12.5(2).
Ordinance § 12.5(3) requires the Board to find that granting the special use permit "will substantially serve the public convenience and welfare," while § 12.5(4) states that the use must not "result in or create conditions inimical to the public health, safety, morals, and general welfare." The Supreme Court has held that to satisfy the standard of showing that a proposed use is "reasonably necessary for the convenience and welfare of the public," an applicant "need only show that `neither the proposed use nor its location on the site would have a detrimental effect upon public health, safety, welfare, and morals.'"Toohey v. Kilday, 415 A.2d 732, 735-36 (R.I. 1980) (quoting Hester v.Timothy, 108 R.I. 376, 385-86, 275 A.2d 403, 406 (1971)) (emphasis in original omitted). This Court finds that Appellants' expert witnesses provided the Board with substantial evidence showing that the proposed use would not have a detrimental or inimical effect upon the public health, safety, welfare and morals. Therefore, Appellants have satisfied Ordinance §§ 12.5(3) and (4).
Ordinance § 12.5(5) additionally requires the Board to find that the proposed use "will not substantially or permanently injure the appropriate use of surrounding property." The testimony of both of Appellants' witnesses constitutes substantial evidence in support of such a finding. Although several neighbors told the Board that *Page 17 
they believed granting the special use permit would reduce their property values, it is well-settled in Rhode Island "that the lay judgments of neighboring property owners on the issue of the effect of the proposed use on neighborhood property values . . . have no probative force in respect of an application to the zoning board of review for a special exception." Salve Regina v. Zoning Board of Review,594 A.2d 878, 881 (R.I. 1991) (quoting Toohey v. Kilday, 415 A.2d 2d 732, 737 (R.I. 1980)). At the same time, testimony from neighboring property owners that the proposed construction would create drainage problems has no probative value as such statements constitute mere opinions without any factual basis. As such, this Court finds that there was no competent evidence before the Board to refute the testimony of Appellants' witnesses as to this issue and that Appellants have presented substantial evidence showing that their application satisfies Ordinance § 12.5(5).
The final factors that the Board is required to consider include access to air, light, views, and solar access; public access to water bodies, rivers, and streams, and; the conservation of energy and energy efficiency. Ordinance § 12.5(6). This Court first notes that under Rhode Island law a "landowner has no right to the light and air coming to him across his neighbor's land." Dowdell v. Bloomquist 847 A.2d 827, 835
(R.I. 2004) (quoting Musumeci v. Leonardo, 77 R.I. 255, 260,75 A.2d 175, 178 (1950)); see also G.L. 1956 § 34-7-3 (stating that an individual may not acquire an easement to light or air over a neighboring property). As such, any consideration of these issues would be in excess of statutory authority and cannot support the Board's denial. Nevertheless, the Board was presented evidence, via Appellant's expert witness, Mr. Carrigan, that the proposed use would not have any effect on public access to water bodies. Neither did the *Page 18 
Board find that there would be any negative impact on energy conservation. Therefore, this Court finds that the Board had before it probative evidence that Appellants have satisfied Ordinance § 12.5(6).
In its review of the entire record, this Court is satisfied that Appellants have satisfied all of the special use requirements that are contained within the Ordinance and consistent with state law. Therefore, this Court finds that the Board's failure to grant Appellant's application was clearly erroneous in view of the substantial evidence in the entire record, was affected by error of law to the extent that the Board relied on incompetent evidence, and constituted an abuse of discretion.
 Dimensional Relief
Although the Board did not act upon Appellants' application for dimensional variances, it found that the proposed structure requires relief from the dimensional requirements contained in Ordinance §§ 6.5 and 4.4(c)(8).[10] Section 6.5 requires a front yard setback of twenty-five feet and a side yard setback of eight feet, while the proposed structure would have a ten foot front yard setback and seven foot side yard setback. Section 4.4(c)(8) states that a one-hundred foot buffer from "natural shoreline features" is required in the coastal resource overlay district, while Appellants' proposal would place the structure eight feet from the riprap on the property. In sum, Appellant's proposal requires variances of ten feet from the front setback, one foot from the side yard setback, and ninety-two feet from the buffer mandated under § 4.4(c)(8). This Court finds that *Page 19 
substantial evidence exists to support the Board's findings that Appellants' proposal requires dimensional relief from the provisions of the Ordinance.
The requirements for obtaining a dimensional variance are laid out in G.L. 1956 §§ 45-24-41(c) and (d). Turning first to G.L. § 45-24-41(d), the statute provides, in pertinent part, that
 [t]he zoning board of review shall, in addition to the above standards [those found in subsection (c)], require that evidence is entered into the record of the proceedings showing that . . . (2) in granting a dimensional variance, that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted is not grounds for relief.
This Court notes that the Ordinance provision based upon the above statutory language is inconsistent with state law. Specifically, Ordinance § 11.6 contains language derived from the pre-2002 version of G.L. 1956 § 45-24-41(d) defining the phrase "more than a mere inconvenience" as requiring a showing that, in the absence of relief, an applicant is left with "no other reasonable alternative to enjoy a legally permitted beneficial use of one's property." This requirement has been eliminated by the 2002 amendment to G.L. 1956 § 45-24-41(d) and the Supreme Court has "recognize[d] that the revised language in the 2002 amendment lessens the burden of proof necessary to obtain dimensional relief and an applicant need show only that the effect of denying dimensional relief amounts to more than a mere inconvenience."Lischio v. Zoning Board of Review of North Kingstown, 818 A.2d 685, 692
(R.I. 2003). As such, the definition of "more than a mere inconvenience" as provided in Ordinance § 11.6 cannot be read in contravention of statutory provisions. *Page 20 
Applying the holding in Lischio to the instant case, this Court notes that the evidence before the Board shows that the property as platted is fifty feet by one hundred feet, contains a coastal feature, and that Ordinance § 4.4(c)(8) prohibits the construction of any structure within one-hundred feet of a coastal feature. Given the physical dimensions of the property, it is apparent that no structure could ever be erected on the property without relief from the one-hundred foot buffer requirement. Appellants have produced evidence that their application for dimensional relief from Ordinance § 4.4(c)(8) "far exceed[s] the more than a mere inconvenience standard of proof because without dimensional relief [Appellants] would be left with no other reasonable alternative to enjoy any legally permitted beneficial use of their property." Lischio, 818 A.2d at 293 (emphasis in original).
Appellants have also introduced competent evidence that compliance with Ordinance § 6.5 front and side yard setback requirements amounts to more than a mere inconvenience. At the Board's public hearings, Mr. Carrigan testified that the variances were necessary to construct a home on the property as they allow the structure to be located as far from the coastal feature as possible. Tr. 5/5/05 at 5. The Board recognized that the only way for Appellants to satisfy the setback requirements would be to build the structure, in the words of Appellants' counsel, "on top of the riprap." Id. at 11. An examination of the testimony introduced at the public hearings shows that the Board had before it evidence that denial of Appellants' request for relief from Ordinance § 6.5 would amount to more than a mere inconvenience.
Although Appellants have presented competent evidence that they are entitled to relief under G.L. 1956 § 45-24-41(d), Appellants still must satisfy the requirements *Page 21 
contained in G.L. 1956 § 45-24-41(c). Sciacca v. Caruso, 769 A.2d 578,584 (R.I. 2001) (holding that § 45-24-41(c) applies to applications for both use and dimensional variances). Section 45-24-41(c) sets forth a four prong test and states that the Board must have before it sufficient evidence to meet the following standards:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45-24-30(16);
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary.
While the Board did not make any specific findings with regards to the four prong test, this Court notes that the record contains substantial evidence showing that Appellants have satisfied each of the four requirements.
As to the first prong, the evidence demonstrates that the hardship complained of results from the unique characteristics of the property because the presence of the riprap, when combined with the area of the lot, necessitates a dimensional variance if Appellants are to construct their home. Considering the second prong, the record evidences that the hardship is not due to Appellants' own prior actions as the property was platted out *Page 22 
before being zoned R-10. It follows that the hardship is due to the property's being substandard and not primarily from Appellants' desire to realize greater financial gain.[11]
The third prong requires evidence that granting the special use permit will not alter the general character of the surrounding area or impair the intent or purpose of the Ordinance or the Comprehensive Plan. The Board had before it uncontroverted evidence that the property is located in an area in which the surrounding uses consist entirely of single-family homes — the majority of which also encroach on required front and side setbacks — and that there are no commercial uses in the neighborhood. Mr. Sahagian, Appellants' expert witness, testified that Appellants' proposed use of the property is "in harmony" with the surrounding uses and will "conform with all the other homes in the area." Tr. 5/5/05 at 14. In addition, the Planning Board reviewed Appellants' application and determined that the proposed construction is in conformance with the town's comprehensive plan. Thus, the Board had before it substantial evidence that "the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan" and that Appellants have satisfied the third requirement of § 45-24-41(c).
Turning to the final prong, Appellants must show that the relief requested is the least relief necessary. As already noted, Appellants require relief from the one hundred foot buffer requirement found in Ordinance § 4.4(c)(8) in order to be able to make any beneficial use of the property. A witness on behalf of Appellants also stated that relief from Ordinance § 6.5 is necessary in order to locate the structure as far from coastal features as possible. Because it is clear from the record that Appellants are prohibited *Page 23 
from constructing a home without dimensional relief, Appellants have demonstrated that they have sought the least relief necessary.
Given all of the foregoing, this Court finds that Appellants presented substantial evidence before the Board showing that their application meets all of the requirements contained within G.L. 1956 §§ 45-24-41(c) and (d). As such, the Board's denial of the relief sought from the provisions of Ordinance §§ 4.4(c)(8) and 6.5 was not supported by substantial evidence in the record and was an abuse of discretion.
 Conclusion
This Court finds that the Board's decision was not supported by substantial evidence, was in excess of statutory authority, and constituted an abuse of discretion. This Court further finds that the Board's decision was clearly erroneous in light of the reliable, probative and substantial evidence contained in the entire record showing that the proposed structure would not present a hazard to the public health, welfare, or morals and that it would not present a danger to surrounding properties. Substantial rights of the Appellants have been prejudiced.
For all of the foregoing reasons, the decision of the Narragansett Zoning Board of Review denying the application for a special-use permit along with dimensional variances is reversed. This matter is hereby remanded to the Board to grant the requested special use permit and dimensional variances with the conditions recommended by the Narragansett Planning Board, subject to the final approval of the project by the CRMC as well as satisfaction of any additional conditions that the CRMC may impose.
Counsel shall submit an appropriate order for entry in accordance with this Decision.
[1] The parties do not agree on the reason why a one hundred by fifty foot parcel contains only 4760 square feet. In its legal memoranda, the Board contends that the differential is due to erosion of the coastline. In response, Appellants claim that no evidence of coastal erosion was ever introduced and that because the property is located on irregularly shaped shoreline, the property did not cover 5000 square feet even when originally platted. Given that the Board did not make any factual findings as to whether or not the property had been subject to erosion, the ultimate explanation for the property's actual square footage is immaterial and need not be considered by this Court.
[2] The conditions recommended by the Planning Board are as follows:
 1. That all construction is done in strict conformance with the submitted site plan. If CRMC was to modify this project it still may be approved provided no further relief from the Ordinance is required.
 2. That 400 sq. ft. of stone or gravel parking is provided, as per section 7.9 — Automobile Parking Space (200 sq. ft. of parking space per bedroom).
 3. That any area of disturbance be reseeded or sodden with a low maintenance conservation grass mixture. Information relative to possible seed mixtures is available through the Department of Community Development. Only slow release fertilizers are permitted to maintain an intact vegetative cover.
 4. That prior to the issuance of a building permit, the applicant must submit a comprehensive erosion control plan to the Town of Narragansett for their approval. The plan must be in accordance with the Rhode Island Soil Erosion and Sedimentation Control Handbook. Said erosion control measures must be in place prior to the start of any construction and shall be maintained or replaced throughout the construction phase. They may only be removed when vegetative cover has been restored.
[3] While the Board never formally recognized Mr. Carrigan as an expert, it is clear from the record that the Board accepted his testimony touching on issues that are beyond the knowledge of the average person. One Board member even asked for Mr. Carrigan's opinion as to the legal interpretation of a provision of the Narragansett Zoning Ordinance. In sum, the Board treated Mr. Carrigan as if he had been qualified as an expert witness and this Court finds that Mr. Carrigan's testimony before the Board constituted expert testimony.
[4] Although the transcript of the hearing indicates that the name of the second witness is Gordon Hood, Appellants state that the transcript is in error and that the correct name is actually Jerry Sahagian. Examining the record as a whole, this Court finds that the transcript is erroneous as the minutes of the Board hearing indicate that Jerry Sahagian was called as a witness, and elsewhere in the transcript the witness is referred to as Mr. Sahagian and not Mr. Hood.
[5] This Court notes that Appellants failed to strictly comply with G.L. 1956 § 45-24-69.1(d), which states that an aggrieved party must file an affidavit with this Court within twenty days after serving notice of its appeal. Here, Appellants filed a "Certificate of Service" in which Appellants' counsel certifies that he has complied with the provisions of § 45-24-69.1. This attorney certification is clearly not an affidavit, which the Supreme Court has defined as "a written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath of affirmation of the party making it, taken before a person having authority to administer such oath or affirmation." Scarborough v. Wright, 871 A.2d 937, 939 (R.I. 2005) (quoting State v. Hasse, 247 Neb. 817, 819, 530 N.W.2d 617, 618 (1995)). Although the requirements set forth in § 45-24-69.1 are not jurisdictional in nature, Appellants' failure to comply with those requirements provides this Court with discretion to dismiss their appeal. See Jeff Anthony Properties v. Zoning Bd. of Review of the Townof North Providence, 853 A.2d 1226, 1231-32 (R.I. 2004) (holding that dismissal is permissible only after giving due consideration to the reasons for a party's failure to comply with § 45-24-69.1 as well as any prejudice to the party that was not properly notified). Given that the Board has not objected to Appellants' violation of statutory provisions, this Court finds that the Board has not been prejudiced thereby and therefore declines to exercise its discretion to dismiss the appeal.
[6] Ordinance § 12.5 specifically authorizes the Board to grant a dimensional variance from the requirements of § 4.4(c)(8).
[7] This Court notes that although the letter is dated May 5, 2005, Shirley LaBrecque's signature is dated May 10, 2005 and Rodney LaBrecque's signature is dated May 12, 2005.
[8] The Ordinance does not require that a project first receive CRMC approval to be entitled to a special use permit. Rather, it states that an applicant must show "the proposed project or activity complies with all applicable development standards and other requirements imposed by this ordinance and by the state coastal resources management council." Ordinance § 4.4(b). The plain language of this section recognizes that the CRMC may place its own conditions upon a proposal apart from those required by the Board. As such, the Board is authorized to grant a special use permit conditioned on the subsequent approval of the CRMC. In fact, CRMC regulations require an applicant to receive final approval from the local zoning board before the CRMC will consider any proposed construction. See Coastal Resources Management Plan § 300.3(C) (requiring an applicant to show that any necessary relief from a zoning ordinance has been granted and that such decision is final).
[9] Ordinance § 4.4(c)(8), requiring that no structure be built within one hundred feet of a coastal feature, shall be discussedinfra. At this juncture it is sufficient to note that Appellants have fulfilled this requirement as well because Appellants have brought sufficient evidence to show that they are entitled to dimensional relief from that provision of the Ordinance.
[10] The Board's written decision states that the proposal requires relief from the provision of Ordinance § 6.4. However, the parties agree that the property is a legally created substandard lot of record and therefore subject to the modified dimensional requirements set forth in § 6.5. Given that the Board's written decision actually refers to the dimensional requirements of § 6.5, this Court finds that the Board's reference to § 6.4 is a typographical error.
[11] This Court also notes that even if Appellants were to realize some financial gain as a result of being granted a variance, that fact does not in itself render Appellants ineligible to receive a variance. The statute merely states that the desire may not arise "primarily" from the desire to realize greater financial gain. *Page 1